**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ANNA GRIM, ) | |
| ) | CASE NO. 5:12CV2801 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Anna Grim ("Grim") challenges the final decision of the Commissioner of Social Security, Carolyn W. Colvin[1] ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

---

[1] Defendant indicates that Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013; and, that, pursuant to Fed. R. Civ. P. 25(d), Ms. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. (Doc. No. 17 at 1.) Plaintiff does not object.

## I. Procedural History

In June 2009, Grim filed applications for a POD, DIB, and SSI, alleging a disability onset date of May 15, 2009 and claiming she was disabled due to arthritis in her fingers, toes, and knees; shortness of breath due to being overweight; and, depression. (Tr. 183, 190, 196.) Her application was denied both initially and upon reconsideration. Grim timely requested an administrative hearing.

On August 19, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Grim, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 32-70.) On August 26, 2011, the ALJ found Grim was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 14-25.) The ALJ's decision became final when the Appeals Council denied further review. (Tr. 1-3.)

## II. Evidence

*Personal and Vocational Evidence*

Age fifty-two (52) at the time of her administrative hearing, Grim is a "person closely approaching advanced age" under social security regulations. *See* 20 C.F.R. § 404.1563(d)/ 416.963(d). She has a twelfth grade education and past relevant work as a childcare worker. (Tr. 24, 35, 40.)

*Hearing Testimony*

At the August 19, 2011 hearing, Grim testified as follows:

- She lives with her nephew. (Tr. 46.)

- She was let go from her job as a child care worker in May 2009 in part because of her physical problems. She had difficulty standing, picking up the children, and changing diapers. (Tr. 55.)

- She has tried to find child care work since losing her job, but has been unsuccessful because of her age and the fact that she lacks a child development associate degree. (Tr. 40.) She works part time as a church secretary. (Tr. 39.) This position involves typing and folding the announcements for the Sunday morning service. She goes in once per week for about twenty minutes. She has done this for three years. (Tr. 39-40, 60.)

- Her most significant problems are her feet, legs, fingers, and the fact that she is "in pain 24/7 pretty much." (Tr. 40-41.) She can stand for five minutes before needing to sit down because of "pain all the way up her back." (Tr. 53-54.) She experiences swelling in her lower extremities "quite often" and needs to elevate her legs. (Tr. 54.) She also has psoriasis on her back and legs, which causes her to feel sore and itchy. (Tr. 60-61.)

- She suffers from cirrhosis, osteoarthritis of the knees, chronic kidney disease, hypertension, cellulitis of the right lower extremity, hyperlipidemia, Raynaud's, gout, and adjustment disorder with mixed anxiety. (Tr. 41-42.) She primarily takes Tylenol for her pain because she cannot take anything else due to her kidney problems. (Tr. 43.) She has been prescribed Prednisone and Vicodin for her gout. (Tr. 43-44.) She takes Benicar for her blood pressure. (Tr. 50-51.) She does not experience any side effects from these medications. (Tr. 51.)

- She is overweight; i.e. five feet tall and 301 pounds. (Tr. 52.) Her doctor has advised her to lose weight. (Tr. 53.) She swims occasionally if the water is warm enough. (Tr. 52.)

- She had been seeing a counselor for her depression but can no longer afford it. (Tr. 45.) She cries a lot; i.e. two to three times per week. She used to have panic attacks but has not had any for a "quite a while." (Tr. 56.) She also used to get homesick and could not go anywhere. (Tr. 56.)

- On a typical day, she gets up at 8 a.m., watches television, does the dishes, "sits around," and reads. (Tr. 46.) She bathes daily, dresses herself, prepares at least one meal per day, and vacuums and dusts once per week. (Tr. 47-48.) She goes grocery shopping, but uses the electrical cart to get around the store. (Tr. 49-50.) She has a driver's license but only drives short distances. (Tr. 45-46.) She has difficulty making the bed and taking out the trash. (Tr. 48.) She has to sit on a foot stool to do the dishes. (Tr. 42.) When she is having a "flare up," she cannot brush her teeth or comb her hair. (Tr. 59.) This occurs four to five times per month. (Tr. 59.)

- She gets together with her friends occasionally to play cards, dominoes, etc. She visits with her family and goes to church every Sunday. (Tr. 48-49.) She occasionally emails and goes on Facebook. (Tr. 52.) She can no longer do arts

3

    and crafts because of lack of sensation in her fingers. (Tr. 42-43.)

- She used her mother's scooter to get to the hearing because she has difficulty walking long distances. (Tr. 37.) It was not prescribed for her and she has not discussed the need for an ambulatory aid with her doctor. (Tr. 37-38.)

The ALJ then posed the following hypothetical to the VE:

> I want you to assume a hypothetical individual with the following limitations. The individual can only perform light work activity. That is lifting and carrying of up to 20 pounds occasionally and the lifting and carrying up to 10 pounds frequently. They could stand and walk for about six hours and sit for about six hours in an eight hour day with normal breaks. As far as foot controls the right lower extremity could only be used frequently. The individual can never climb ladders, ropes or scaffolds, can occasionally climb ramps or stairs and can frequently balance, can occasionally stoop, occasionally kneel, occasionally crouch and never crawl. As far as bilateral handling of objects, of gross manipulation we're going to go with frequent and as far as fine manipulation, bilaterally the individual can perform that frequently. The individual should avoid all exposure to extreme cold and I'm going to add that they should avoid moderate exposure to moving hazardous machinery and avoid even moderate exposure to unprotected heights. In terms of the mental I'm going to say that the individual is able to understand, remember and carry out simple instructions, the individual is able to make judgments on simple work related decisions, and the individual is able to interact approximately [sic] with supervisors and co-workers in a routine work setting and the individual is able to respond to usual work situations and changes in a routine work setting. Given this hypothetical could the individual perform any of the claimant's past relevant work as actually or generally performed?

(Tr. 64-65.) The VE testified that this hypothetical individual would not be able to perform Grim's past relevant work as a childcare worker but would be able to perform other jobs, including inspector and hand packager, mail clerk, and electronics worker. (Tr. 65.)

    The ALJ then asked whether the hypothetical claimant could still perform the three identified jobs if she was limited to light work and the other restrictions noted above, but could only stand and walk for about four hours. (Tr. 66.) The VE testified that this hypothetical

claimant could perform the same three previously identified jobs. (Tr. 66.) The ALJ then asked "if an individual was out, had to miss work four to five times a month due to their impairments, could they perform competitive work?" (Tr. 66-67.) The VE testified that "four or five days would be excessive and there would be no competitive work for someone missing four or five days." (Tr. 67.)

Grim's attorney then asked the VE to adopt the first hypothetical but "change the frequency of the gross and fine manipulation down to occasional." (Tr. 67.) The VE testified that, if this restriction were bilateral, it would significantly "erode the database" for the three previously identified jobs. (Tr. 67.) The VE testified there would be other jobs that such a hypothetical claimant could perform, including counter clerk, furniture rental clerk, and investigator of dealer accounts. (Tr. 67-68.) However, he noted that these jobs would require standing for at least six hours. (Tr. 68.)

Finally, Grim's attorney asked the VE whether any jobs would be available if the hypothetical claimant needed to occasionally elevate her legs at waist height throughout the work day. (Tr. 69.) The VE testified that special accommodations would need to be made for such an individual. (Tr. 69.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Grim was insured on her alleged disability onset date, May 15, 2009, and remained insured through the date of the ALJ's decision, August 25, 2011. (Tr. 14.) Therefore, in order to be entitled to POD and DIB, Grim must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Grim established medically determinable, severe impairments, due to adjustment disorder with mixed anxiety, psoriasis, osteoarthritis of the knees, status post acute renal insufficiency, chronic kidney disease, hypertension, hyperlipidemia, obesity (BMI + 48), cellulitis of the right lower extremity, Raynaud's and gout; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16-17.) Grim was found incapable of performing her past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 18-24.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Grim was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The findings of the Commissioner are not subject to reversal merely because there exists in

the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh*

8

*v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

### VI. Analysis

In her sole assignment of error, Grim argues the residual functional capacity (RFC) assessed by the ALJ does not adequately account for moderate limitations in concentration, persistence, and pace. She maintains the ALJ acknowledged such limitations at Step Three of the sequential evaluation process and, therefore, was required to properly accommodate them in the RFC. Grim argues that the RFC's limitation that she perform work involving only simple instructions and simple decisions "has nothing to do with concentration, persistence, and pace." (Doc. No. 15 at 14.) She further argues that the three jobs identified by the VE (i.e. inspector/hand packager, mail handler, and electronics worker) "could certainly entail high production rates and quota-based work." (Doc. No. 15 at 15-16.) Because the VE was not given the chance to testify whether these jobs "would be performable by a person with moderate limitations in concentration, persistence, and pace resulting in an inability to perform quicky or on a quota system," she maintains the ALJ's finding of disability is not supported by substantial evidence. (Doc. No. 15 at 15-16.)

The RFC determination sets out an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 416.927(d)(2). An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R.§ 416.927(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 416.946(c).

"Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 WL 1028105 at * 7 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)).

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). In fashioning a hypothetical question to be posed to a VE, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

Here, the ALJ found at Step Three that Grim did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 16-17.) The ALJ expressly considered whether Grim met or equaled the criteria of several listings based on mental impairments, specifically Listings 12.04 and 12.06. (Tr. 17.) The ALJ tracked the language utilized in the listings, and found that in the category of "concentration persistence, *or* pace," Grim had moderate difficulties. (Tr. 17) (emphasis added). She then assessed the RFC as

follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can only stand and walk for about four hours in an eight hour workday. She can use foot controls with the right lower extremity frequently. She can never climb ladders, ropes, or scaffolds but can occasionally climb ramps or stairs, stoop, kneel, and crouch. She can frequently balance but never crawl. Bilateral handling/gross manipulation is limited to frequent. Bilateral fine manipulation is limited to frequent. The claimant must avoid all exposure to extreme cold. She must avoid even moderate exposure to moving hazardous machinery and unprotected heights. **The claimant can understand, remember and carry out simple instructions. She is able to make judgments on simple, work related decisions**. She is able to interact appropriately with supervisors and coworkers in a routine work setting. She is able to respond to usual work situations and changes in a work setting.

(Tr. 18) (emphasis added).

Grim contends that the concentration, persistence, and pace restrictions found by the ALJ at Step Three were omitted from both the above RFC and the hypothetical question posed to the VE because neither reflected her inability to "perform quickly or on a quota system." (Doc. No. 15 at 16.) Grim relies on the Sixth Circuit's decision in *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), to support her argument. In *Ealy*, the Sixth Circuit was confronted with a situation where the ALJ ascribed significant weight to the opinion of a state agency psychological consultant, yet omitted that same consultant's opinion that the claimant could only perform "simple repetitive tasks for two-hour segments over an eight-hour day where speed was not critical." *Id*. Conversely, the Commissioner argues the facts in *Ealy* are distinguishable from the case at bar because that claimant was ascribed specific speed and pace-based limitations that are not present here. (Doc. No. 17 at 16).

As this Court understands Grim's argument, she believes the RFC and hypothetical, which

11

limited her to work involving simple instructions and simple decisions, were insufficient to convey the moderate difficulties she had with respect to *pace*. The phrase "concentration, persistence, or pace" is derived from the express language of the listings dealing with mental impairments. It is one of the four categories of criteria used to assess a claimant's functional limitations. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00(C). When comparing a claimant's mental impairments with the listings at Step Three, an ALJ will usually determine whether a claimant has moderate, marked, or extreme limitations in the four categories. Notably, the criteria concerning limitations in "concentration, persistence, or pace" is written in the disjunctive. Grim's argument is premised on the assumption that the ALJ found she was moderately limited in **all three** areas, including pace. This assumption, however, is without basis. "As a preliminary matter, it is significant to note that the ALJ did not necessarily attribute all three impairments—deficient concentration, persistence, and pace—to [claimant]. The classification is written in the disjunctive." *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997). In *Brachtel*, the Eighth Circuit explained that even though an ALJ finds limitations in the category of concentration, persistence or pace, the ALJ is "not necessarily making a finding that the claimant has all three of these impairments." *Id.* Courts within this District have reached a similar conclusion. *See e.g. Kline v. Astrue,* 2013 WL 1947164 (N.D. Ohio April 17, 2013) report and recommendation adopted, 2013 WL 1946201; *Schooley v. Astrue*, 2010 WL 5283293 at * 2 (N.D. Ohio Dec. 17, 2010).

Here, in limiting Grim to work involving simple tasks and simple instructions, the ALJ appears to have given Grim the benefit of the doubt that she was impaired in her ability to

12

maintain attention.³ (Tr. 509, 520.) There is no indication the ALJ credited any evidence with respect to difficulties maintaining pace. This is not surprising given that Grim fails to cite any physician opinion indicating she has any functional limitations in this regard. Given this lack of evidence and reading the decision as a whole, this Court does not believe the ALJ found that Grim had moderate pace-based limitations. Because an ALJ is only required to incorporate in the RFC or hypothetical those limitations that he or she accepts as credible, the ALJ did not err by omitting pace-based restrictions.

The Court also agrees with prior decisions of this District that declined to find *Ealy* established a *per se* rule concerning the level of functional limitations that must be ascribed whenever a claimant is determined to have moderate limitations in his or her ability to maintain "concentration, persistence, or pace."

> *Ealy* does not require further limitations in addition to limiting a claimant to "simple, repetitive tasks" for every individual found to have moderate difficulties in concentration, persistence, or pace. *See Ealy*, 594 F.3d 504. Instead, *Ealy* stands for a limited, fact-based, ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions. *See Id.* In *Ealy*, the claimant presented evidence from the record that showed the claimant's limited ability to maintain attention over time, even when performing simple, repetitive tasks. *See Id.* Here, unlike *Ealy*, Plaintiff refers to no record evidence

---

³ State agency consultative examiner Michael Horvan, Ph.D., conducted two examinations of Grim, in September 2009 and April 2010. In his September 2009 evaluation, Dr. Horvan concluded that Grim's ability to understand and follow instructions was mildly impaired. (Tr. 437.) In April 2010, Dr. Horvan concluded Grim had "slight difficulty focusing attention and concentration" and opined that her "ability to maintain attention to perform simple or multi-step, repetitive tasks is mildly impaired." (Tr. 509.) In May 2010, state agency physician Cynthia Waggoner, Psy.D., found that Dr. Horvan's opinion that Grim was mildly impaired in her ability to maintain attention and concentration is "consistent with exam findings." (Tr. 520.) In the decision, the ALJ states that she gave little weight to these examiners' findings to the extent they found Grim's mental impairment was "non-severe." (Tr. 23.) Rather, the ALJ decided to "give[] the claimant the benefit of the doubt that her condition results in the above noted limitations" set forth in the RFC. (Tr. 23.)

to suggest that she had any greater limitations than those identified by the ALJ. *Jackson v. Comm'r of Soc. Sec.*, 2011 WL 4943966 (N.D. Ohio Oct. 18, 2011) (Boyko, J.); *accord Kline v. Astrue,* 2013 WL 1947164 (N.D. Ohio April 17, 2013) report and recommendation adopted, 2013 WL 1946201; *Todd v. Astrue*, 2012 WL 2576435 (N.D. Ohio May 15, 2012) report and recommendation adopted, 2012 WL 2576282 (N.D. Ohio July 3, 2012); *Clayton v. Astrue*, 2013 WL 427407 (S.D. Ohio Feb. 1, 2013); *Horsely v. Astrue*, 2013 WL 55637 (S.D. Ohio Jan. 3, 2013); *cf. Raymond v. Comm'r of Soc. Sec.*, 2012 WL 2872152 (N.D. Ohio June 4, 2012) report and recommendation adopted, 2012 WL 2872462 (N.D. Ohio July 12, 2012) (acknowledging that "[t]he law in this District on the proper application of *Ealy* remains in the development stage").

Here, as in *Jackson*, Grim cites no medical or opinion evidence suggesting she has any greater limitations with respect to her mental impairments than those identified by the ALJ and incorporated into the RFC. Notably, she does not cite any evidence indicating she is limited in her ability to perform work involving high production rates or quota-based work. In this respect, Grim's reliance on *Cortes v. Astrue*, 2012 WL 4050157 (N.D. Ohio Sept. 13, 2012), and *Thompson v. Astrue*, 2011 WL 3298904 (N.D. Ohio Aug. 2, 2011) is misplaced. In both of those cases, the court vacated and remanded where the RFC failed to adequately account for the claimants' moderate impairments in concentration, persistence, and pace. However, unlike the instant case, the claimants in *Cortes* and *Thompson* each presented opinion evidence from treating and/or state agency physicians indicating that they, in fact, had moderate to marked impairments in concentration, persistence, and pace that were not reflected in the RFC. *See Cortes*, 2012 WL 4050157 at * 2; *Thompson*, 2011 WL 3298904 at * 6-7. Grim presents no such evidence here

14

with respect to the speed or pace-based restrictions. To the contrary, state agency consultative examiner Michael Harvan, Ph.D., assessed Grim's pace of performance as average in September 2009, and noted only that her pace was "slightly slowed by . . . inattention" in his May 2010 assessment. (Tr. 438, 509.) Moreover, state agency physicians Jennifer Swain, Psy.D. and Cynthia Waggoner, Psy.D. found only mild limitations in Grim's concentration, persistence, or pace in their October 2009 and May 2010 assessments. (Tr. 457, 520.) Grim does not cite any opinion from a treating or examining physician to the contrary.

In her Reply Brief, Grim argues that "it is not just that the RFC in this matter fails to incorporate specific speed- and pace- based limitations." (Doc. No. 20 at 2.) Rather, she argues that the RFC "contains absolutely *no* restrictions that reflect limitations in concentration, persistence, and pace." *Id*. (emphasis in original). In support of this argument, she cites cases for the proposition that "the fact that a job is simple and unskilled has nothing to do with whether or to what degree a worker's moderate concentrational deficiencies will affect the timely completion of the job." *Thompson*, 2011 WL 3298904 at * 13 (collecting cases).

As an initial matter, Grim does not adequately explain how the RFC's simple instructions/simple decisions limitation is insufficient to accommodate her alleged deficiencies in concentration and persistence, nor does she specifically identify any additional or alternative limitations she feels should have been included. Moreover, her argument might have merit had Grim presented evidence suggesting she, in fact, had limitations in concentration, persistence, and/or pace that were not reflected in the RFC. As discussed above, Grim does not direct this Court's attention to any opinion from a treating or examining physician indicating she has any mental limitations beyond those set forth in the RFC. In addition, she does not direct the Court's

15

attention to any treatment notes suggesting functional restrictions relating to her mental impairments.

While it is true that the ALJ found moderate difficulties in concentration, persistence, or pace at Step Three, she was only required to include in the hypothetical those limitations she found credible. The ALJ thoroughly analyzed the hearing testimony and opinion evidence regarding Grim's mental impairments and, giving her the "benefit of the doubt," restricted her to work involving simple instructions and decisions. Grim does not challenge the ALJ's characterization of the medical evidence, the weight accorded to the various physician opinions, or the ALJ's assessment of her credibility. Under these circumstances, the Court finds Grim has not demonstrated the RFC failed to adequately allow for her limitations.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: September 23, 2013